## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 23 2016, 8:19 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell Dean Bailey
Demotte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of N.C. (Minor Child), <br><br> and <br><br> W.M. (Father), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, | June 23, 2016 <br><br> Court of Appeals Case No. 37A03-1602-JT-261 <br><br> Appeal from the Jasper Circuit Court <br><br> The Honorable John D. Potter, Judge <br><br> Trial Court Cause No. 37C01-1509-JT-262 |

**Crone, Judge.**

# Case Summary

[1]     W.M. ("Father") appeals the involuntary termination of his parent-child relationship with his daughter, N.C.  He challenges the trial court's denial of his oral motion for continuance made on the day of the termination hearing.  He also challenges the sufficiency of the evidence to support the termination order. Concluding that the trial court acted within its discretion in denying Father's motion for continuance and finding no clear error in the trial court's decision to terminate the parent-child relationship, we affirm.

# Facts and Procedural History

[2]     The facts most favorable to the judgment are as follows.  Father and A.W. ("Mother") are the parents of N.C., born February 9, 2012.[1]  In July 2012, Father was the subject of a substantiated finding by the Department of Child Services ("DCS") in Tippecanoe County for leaving N.C., then an infant, unsupervised in a vehicle.  Father was found intoxicated and unable to care for

---

[1] Mother was also the subject of the involuntary termination order, but she is not participating in this appeal. As such, we include background facts involving Mother where relevant but limit our discussion to the facts and circumstances involving Father.

N.C. The child lived with Mother, Mother's boyfriend, and the boyfriend's father in Jasper County.

[3] In August 2014, Jasper County DCS received a report of an incident in which Mother was found unresponsive and slumped over in the driver's seat of a vehicle, while the vehicle was in "drive" in the roadway and N.C. was in the back seat. Mother admitted that she had been drinking. She tested positive for two narcotics for which she did not have prescriptions. Immediately thereafter, DCS initiated proceedings to designate N.C. a child in need of services ("CHINS"), removed N.C. from Mother's home, and placed her with her maternal grandmother. DCS declined to place her with Father due to his previous substantiation with DCS, lengthy criminal record,[2] and sporadic involvement in N.C.'s life.

[4] At an October 2014 factfinding hearing, Mother admitted to the CHINS petition, and Father failed to appear. The trial court designated N.C. a CHINS and, at the ensuing disposition hearing, ordered Father to establish paternity and maintain weekly contact with the DCS family case manager ("FCM"). At a review hearing in March 2015, the trial court found that Father had failed to comply with N.C.'s case plan, to enhance his ability to fulfill his parenting obligations, and to "comply with DCS." Appellant's App. at 40. In August

---

[2] Father's criminal history includes felony convictions for narcotics possession and theft, two misdemeanor convictions for operating while intoxicated, and misdemeanor convictions for paraphernalia possession and resisting law enforcement.

2015, the trial court held a permanency hearing and changed N.C.'s permanency plan from reunification to adoption.

[5] Father has been in the Department of Correction ("DOC") since January 2015 and is expected to be released in September 2016. He was remanded to the DOC during his two-year home-detention sentence for felony narcotics possession. He must serve a ninety-day work release sentence for a conviction in another county immediately after his release from the DOC and admits that he would not be able to care for N.C. during his work release.

[6] In September 2015, DCS filed a termination petition. During the pendency of the CHINS proceedings, Father had never contacted DCS, responded to the FCM's calls or mailings, or participated in any services. He appeared in person and by counsel at the January 2016 termination hearing and verbally requested a continuance based on his current incarceration. The trial court denied his motion and ultimately issued an order terminating his parental relationship with N.C.

[7] Father now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The trial court acted within its discretion in denying Father's motion for continuance.

[8] Father challenges the trial court's denial of his motion to continue the termination factfinding hearing until after his release from incarceration. The

decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct. App. 2014). We will reverse only for an abuse of that discretion. *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *J.P.*, 14 N.E.3d at 790. Where the trial court denies a motion for continuance, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion. *Rowlett*, 841 N.E.2d at 619; *see also* Ind. Trial Rule 53.5 (stating that trial court has discretion to grant continuance on motion and continuance "shall be allowed upon a showing of good cause established by affidavit or other evidence."). No abuse of discretion will be found where the moving party has not shown that he was prejudiced by the denial of his continuance motion. *J.P.*, 14 N.E.3d at 790.

[9] Here, Father predicated his oral motion for continuance on his incarceration, requesting that the termination hearing be continued until after he has served his sentences, altogether about ten to eleven months. However, he failed to show good cause by affidavit or other evidence, and the trial court noted its concern that the proceedings not be protracted. Similarly, he has failed to show how proceeding with the hearing, where he was present both in person and by counsel, prejudiced him in presenting his case. We find no abuse of discretion in the trial court's denial of his last-minute motion for continuance.

## Section 2 – The trial court did not clearly err in terminating the parent-child relationship between Father and N.C.

[10] Father challenges the sufficiency of the evidence supporting the trial court's judgment terminating his parental relationship with S.L. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

[11] In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights.

Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[12] To obtain a termination of the parent-child relationship between Father and S.L., DCS was required to establish in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

....

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[13] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

## Section 2.1 – The trial court did not clearly err in concluding that a reasonable probability exists that the conditions that led to N.C.'s removal will not be remedied.

[14] Father asserts that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to N.C.'s removal will not be remedied.[3] When assessing whether there is a

---

[3] Father also challenges the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to N.C.'s well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the child's well-being.

reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Moreover, "the trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id*. In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[15] Here, the trial court issued extensive findings of fact, and Father has not specifically challenged any of those findings. Instead, he offers general assertions as to his reasons for failing to participate in services aimed toward reunification. As such, we are left to determine whether the unchallenged findings support the judgment. The unchallenged findings include the following:[4]

---

[4] To the extent that the findings identify N.C., Father, and Mother by name, we use the aforementioned designations.

5. That the child, N.C., was detained on or about August 14, 2014. That N.C. was found in the vehicle with Mother and Mother was found to be passed out on the floorboard of the driver's seat while the car was running.

6. That before N.C. was detained Father had little to no involvement with N.C.

….

9. On or about October 24, 2014, the Court entered its Dispositional Order wherein …. Father was ordered to establish paternity, stay in contact with Family Case Manager, and Father was offered visitation and other services.

….

11. That after the Dispositional Order was entered Father failed to maintain contact with the Family Case Manager, was in and out of incarceration. Father failed to participate in any visitation with N.C. and has not had contact with N.C. since before August of 2014. That Father is presently incarcerated in the Department of Correction[] for possession of heroin. That Father has an extensive criminal history and has had little to no involvement in N.C.'s life.

12. DCS'[s] plan for N.C. is that she be adopted; this plan is satisfactory for N.C.'s care and treatment.

13. It was established by clear and convincing evidence that the allegations of the petition are true in that:

….

b. There is a reasonable probability that: the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied and/or the

continuation of the parent child relationship poses a threat to the well[-]being of the child, in that:

    i. That Father is presently incarcerated and has had numerous arrests throughout the underlying CHINS case ….

    ii. That Father participated in no offered services including visitation with N.C.

    ….

c.  Termination is in the best interest of the child in that:

    i. The child has bonded with the prospective adoptive home.

    ii. That the … Father cannot provide the child with permanency that can be provided by the prospective adoptive home.

Appellant's App. at 7-9.

[16]    Father has a pattern of criminal conduct and substance abuse as well as a previous substantiation for neglect of N.C. All of these were properly considered in determining the reasonable probability of unremedied conditions. *See McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003) (in determining reasonable probability of unremedied conditions, court may properly consider evidence of parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support). Father claims that the trial court should have discounted his criminal history as a factor because it does not include any offenses against children. He also cites his recent sobriety, largely owing to his

incarceration. The trial court considered these circumstances and weighed them accordingly, and we may not reweigh them on appeal.

[17] With respect to his failure to participate in services, Father offers the following excuses: (1) he did not get DCS's phone messages; and (2) he *did* receive DCS's mail correspondence directing him to take certain classes but did not attend because he did not have a ride. As for the phone messages, he admitted that when not incarcerated, he lived at his father's home. Indeed, he received the mail correspondence sent to his father's address. His assertion that his father failed to give him DCS's phone messages was a question of fact suitable for resolution by the trial court, and we may not make our own credibility determination on this point. As for his claim that he received DCS's mail correspondence but could not attend the classes because he lacked transportation, the onus was on Father to request assistance from DCS or the trial court in getting the services. *See Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007) ("If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance from the court or DCS.").

[18] Also, the record shows that Father neither visited nor attempted to visit N.C. during the time that he was not incarcerated. A parent's failure to exercise his right to visit his child demonstrates a lack of commitment to complete the actions necessary to preserve parent-child relationship. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) *trans. denied*. In fact, Father's contact with N.C. even before the CHINS action was

negligible and involved one substantiation for leaving her alone in a vehicle. In short, Father did not try to visit N.C. when he could and now bemoans the fact that he cannot. The evidence and unchallenged findings support the trial court's conclusion that there is a reasonable probability that the conditions leading to N.C.'s removal will remain unremedied.

## Section 2.2 – Father has failed to present cogent argument concerning N.C.'s best interests and permanency plan.

[19]    Father generally states that he disagrees with the trial court's conclusion that termination of the parent-child relationship is in N.C.'s best interests and that DCS has a satisfactory plan for N.C.'s care. Because he has offered no cogent argument on these elements, he has waived consideration of them for our review. *See A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (parent's failure to support arguments with cogent reasoning results in waiver on appeal), *trans. denied*; *see also* Ind. Appellate Rule 46(A)(8) (requiring that each contention be supported by cogent reasoning with citations to authority).

[20]    Waiver notwithstanding, we emphasize that although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012). Here, the totality of the circumstances shows a father with a history of substance abuse and criminal activity, much of which is related to that abuse. His contact with

his preschool-aged daughter has been negligible, and even at that, he has a DCS substantiation for having left her alone in a vehicle as an infant. FCM Erin Smith testified that termination is in N.C.'s best interests due to Father's continued pattern of substance abuse and criminal conduct that are unsafe for N.C., as well as N.C.'s stability, safety, and bonding in her current placement. "[T]he testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed.*

[21]  Finally, we acknowledge Father's concern that his parental rights not be terminated solely on the basis of his incarceration. Our supreme court has emphasized that incarceration is an insufficient basis upon which to terminate a parent's rights. *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 644 (Ind. 2015) (citing *G.Y.*, 904 at 1264-66). However, the record here clearly shows that the trial court examined the totality of the circumstances and did not rely solely on what Father did not or could not do as a result of his incarceration but also on what he failed to do when he was not incarcerated: visit N.C., participate in services (including those aimed at addressing his substance abuse), and refrain from criminal activity. We recognize Father's fundamental liberty interests in parenting N.C., but we are also mindful that his parental interests are not absolute, must be subordinated to N.C.'s best interests, and may be terminated if he is unable or unwilling to meet his parental responsibilities. *Id*. at 1259-60. His total lack of response to DCS's attempts to initiate services aimed at

reunification when he was not incarcerated indicates an unwillingness that goes beyond the barriers presented by incarceration.

[22] In sum, Father's criminal history, as well as his history of substance abuse, neglect, and nonparticipation in services and visitation, together support the trial court's decision to terminate his parental rights. We decline his invitation to reweigh evidence and reassess his credibility. The trial court did not clearly err in terminating Father's parental relationship with N.C. Accordingly, we affirm.

[23] Affirmed.

Najam, J., and Robb, J., concur.