# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 08 2017, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Donald W. Francis, Jr.
Michelle B. Domer
Francis & Berry Domer
Bloomington, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.W.,<br>*Appellant,*<br><br>v.<br><br>T.M.,<br>*Appellee.* | March 8, 2017<br><br>Court of Appeals Case No.<br>53A04-1609-AD-2165<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Stephen R. Galvin, Judge<br><br>Trial Court Cause No.<br>53C07-1407-AD-64 |

**May, Judge.**

[1] J.W. ("Father") appeals the trial court's order that declared Father's consent was not required for the adoption of Ja.M. ("Child") by T.M. ("Stepfather"). Father argues: (1) the trial court abused its discretion when it denied his eighth motion to continue; and (2) the trial court erred when it determined his consent was not required for Stepfather's adoption of Child. We affirm.

## Facts and Procedural History

[2] Child was born to Je.M. ("Mother") and Father on March 12, 2006. Mother and Father were not married at the time of Child's birth. Father visited with Child "about two (2) weeks after she born up until about two (2) months." (Tr. at 87.) Father established his paternity in 2009.[1] Mother married Stepfather in 2012.

[3] On July 16, 2014, Stepfather filed a petition to adopt Child. Father was notified of the petition and filed a motion to contest the adoption on August 5, 2014. The court scheduled a hearing for September 16, 2014, to appoint a Guardian ad litem ("GAL") and advise Father of his rights. Father requested a continuance of the September 16 hearing because he "was just release[d] from D.O.C. [Department of Correction] on May 19, 2014 [and] will need to talk[] to a counsel to hire one to represent him." (App. Vol. 2 at 39.) The trial court

---

[1] The paternity action was still pending at the time of the adoption proceedings, because Father's visitation and child support had not yet been determined.

denied his request noting "the purpose of the hearing is to advise [Father] of his rights." (*Id*. at 4.)

[4] Father appeared at the hearing on September 16, requested appointment of counsel, and was appointed counsel soon thereafter. On November 6, 2014, the court held a pretrial hearing. Father was not present because "he had to take his father to the VA for some kin[d] of an emergency something." (Tr. at 10.) The court set a hearing for December 16, 2014.

[5] On December 12, 2014, Father filed a motion to continue the December 16 hearing because Father wanted to procure the attendance of his past mental health counselor to testify on his behalf. The trial court granted that motion, and reset the hearing for January 29, 2015. On December 30, 2014, Father's counsel filed a motion to withdraw because Father "believe[d] that [Counsel] [had] a conflict of interest because [Counsel was] a prosecuting attorney over twenty (20) years ago from approximately 1987 to 1992[.]" (*Id*. at 18.) The trial court denied counsel's motion to withdraw.

[6] On January 27, 2015, Father filed another motion to continue, asking for an additional thirty days to retain a new attorney because he believed his counsel's alleged conflict of interest was "negatively affecting counsel's ability to represent natural father and to prepare for a final hearing [and] [c]ounsel is not prepared for said final hearing." (App. Vol. 2 at 57.) On January 29, the court held a hearing on the motion to continue, as well as Father's petition for change

of judge[2] and Father's counsel's second motion to withdraw. Father was present for this hearing. The court granted Father's counsel's motion to withdraw and Father's motion to continue. The court appointed new counsel for Father. The court denied Father's petition for change of judge on February 3, 2015.

[7] The court scheduled a hearing for May 22, 2015. On May 19, 2015, Father filed a motion to continue, requesting additional time to confer with his mental health counselor. The court granted Father's request and rescheduled the hearing for July 1, 2015. On June 12, Father's counsel requested additional funds from the court to pay for the procurement of evidence to present a defense on Father's behalf. On June 30, the court granted Father's request for additional funds and, on July 1, continued the final hearing to September 3, 2015.

[8] On August 28, 2015, Father filed a motion to continue with an attached letter from his cardiologist, Dr. Peterson. The letter indicated Father was admitted on August 11, 2015, "with rapid atrial fibrillation, decompensated heart failure and an ejection fraction of 25%." (*Id*. at 66.) Dr. Peterson's letter stated Father's "medical status is not stabilized well enough to allow him to withstand excessive emotional interrogation." (*Id*.) On September 1, the court held a

---

[2] Father requested a change of judge because the judge in the case "was in the prosecuting attorney's office at the same time as Maryanne Pelic and that Ms. Pelic was somehow related to, or is not somehow but is the mother of this child's cousin's wife." (Tr. at 27.)

hearing on Father's motion to continue and Dr. Peterson appeared telephonically. Dr. Peterson testified "probably six (6) to eight (8) weeks would be a reasonable time frame[,]" (Tr. at 63), to continue the matter so Father's heart could "get back in rhythm and his heart function has a chance to normalize." (*Id*. at 66.) The court continued the matter to November 19, 2015.

[9] On November 17, 2015, Father filed a motion to continue with a letter attached from a different cardiologist, Dr. Heumann. Dr. Heumann's letter indicated Father was scheduled for an "Atrial Fibrillation ablation procedure in the near future [and] should not engage in any stress promoting activities at this time related to his serious cardiovascular disease." (App. Vol. 2 at 69.) On November 19, the court held a hearing on Father's motion to continue and granted Father's motion, setting the matter for a pre-trial conference on January 28, 2016.

[10] At the pre-trial conference on January 28, Father's counsel indicated there had been a delay in Father's treatment and "he's supposed to have the last thing probably mid-February and at that time then they'll be able to determine um, whether he needs surgery or not." (Tr. at 75.) The court granted Father's motion to continue and reset the matter for trial on April 12, 2016. The court noted:

> [I]f he, [Father,] does not believe he is going to be physically able
> to participate um, he needs to inform the court uh, as soon as
> possible so that we can set a hearing and take medical testimony
> and I would have to have, that testimony would have to be in the

nature of some assurances that he could be ready to participate within a reasonable period of time.

(*Id*. at 78.) The matter was later reset due to a conflict on the court's calendar to April 15, 2016. At a pre-trial conference on April 11, 2016, Father orally requested a continuance. The trial court granted Father's request and set the matter for trial on July 21, 2016.

[11] On July 19, 2016, Father filed a motion to continue because "he was too stressed out to assist deal with [sic] the case and was checking himself into a hospital or facility." (App. Vol. 2 at 78.) The court denied Father's motion to continue the same day. On July 20, Father filed another motion to continue with a letter from Dr. Heumann attached. Dr. Heumann wrote, "[Father] will have exacerbations of [Congestive Heart Failure and Atrial Fibrillation] which may cause shortness of breath, fatigue, and edema. These episodes will require rest and treatment to control symptoms." (*Id*. at 81.)

[12] The court held the July 21 hearing as scheduled and denied Father's motion to continue saying:

> I am going to note the following, that uh, there have been seven (7) continuances granted in this matter. The court first granted a continuance due to alleged uh, [Father's] alleged medical condition um, and it is the court, certainly the court's preference that [Father] be able to appear and to actively participate in this case. Um, given that this matter has been repeatedly continued I think that the court has given [Father] every opportunity and would very much, I very much wish that he was here today uh, to address this. I do note however that after the repeated

continuances have been granted uh, on January the 28th the court specifically noted in balancing the interest in this cause that [Father] if he is alleging that he is not capable of participating in the upcoming hearing due to his medical condition must provide additional medical evidence that his condition persists. In other words that he continues to suffer from the, a condition which precludes him from participating in the hearing and that he's unavailable and that he is likely to be capable of participating in these proceedings within a reasonable time frame. Um, the reason for this is obvious. Um, [Father], even if he is unable to due to a physical illness to participate if there is no uh, reasonable time from for him uh, for this condition to be alleviated uh, then there's no way for the court to determine uh, when he might be able to participate. In those circumstances perhaps the best that can be done is that [Father's counsel] represent him at these proceedings uh, and that is the rationale behind the court's order. I do note that the information provided from Doctor Heumann meets neither of these tests. Doctor Heumann does state that he continues to suffer from he has obvious heart condition uh, and that it may require, episodes may require rest and treatment to control symptoms. There is no statement that he is not capable of participating in these proceedings number one. But even if the court were to conclude that that were the case there is no attempt what so ever to provide information on when if ever his medical condition could be resolved. Under the circumstances after two (2) full years and seven (7) continuances the court has given him every opportunity to participate in these proceedings or to find, put himself in a position if he were unable to physically participate uh, to uh, for his condition to be resolved or for him to demonstrate within a reasonable time period that that condition would be resolved and that he would be able to participate. He has done neither.

(Tr. at 84-6) (errors in original). The hearing proceeded without Father, though his counsel was present.

[13] On August 16, 2016, the trial court issued an order that concluded Father's consent to Stepfather's adoption of Child was not required and granted Stepfather's adoption petition.

# Discussion and Decision

### *Motion to Continue*

[14] Father first challenges the court's denial of his motion for continuance. The decision to grant or deny a continuance rests within the sound discretion of the juvenile court. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*. We will reverse the court's decision only for an abuse of that discretion. *Id*. An abuse of discretion occurs when the party requesting the continuance has shown good cause for granting the motion, but the juvenile court denies it. *Id*. No abuse of discretion will be found when the moving party is not prejudiced by the denial of its motion. *Id*. We also "consider whether the record demonstrates dilatory tactics on the part of the movant designed to delay coming to trial." *J.P. v. G.M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014).

[15] Father frames his appeal of the trial court's denial of his motion to continue as a violation of his due process rights. "Due process affords parents the opportunity to be heard at a meaningful time and in a meaningful manner." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). The United States Supreme Court explained the nexus between due process rights and motions to continue in *Ungar v. Sarafite*:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

376 U.S. 575, 589-90 (1964), *reh'g denied*.

[16] Here, Father's motion to continue was denied after the trial court granted at least seven of Father's motions to continue for various reasons over a two-year period. Most of these motions were made two to three days prior to a scheduled hearing, with reasons including a request to procure the attendance of certain witnesses, a request for more time to engage in discovery, a change in counsel, and the inability of Father to participate in the hearing due to his health problems. The motions to continue resulted in a two-year delay in the adoption process of Child, who has known only Stepfather as her father, because Father visited her only when she was an infant. *See Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1040 (Ind. 2004) ("it is in the child's best interest and overall well being to limit the potential for years of litigation and instability").

[17] Further, Father's counsel was present at the hearing, as were witnesses on his behalf. His counsel had an opportunity to cross-examine all of Stepfather's

witnesses, present testimony in support of Father from Father's mental health counselor, Dr. Fink, and to argue on Father's behalf. Father was not prejudiced by the trial court's denial of his motion to continue and thus the trial court did not abuse its discretion. *See In re E.E.*, 853 N.E.2d 1037, 1044 (Ind. Ct. App. 2006) (father was not prejudiced when trial court denied his motion to continue and proceeded with hearing without father because father's counsel was present and called witnesses, cross-examined witnesses, and argued on father's behalf), *trans. denied*.

### Sufficiency of the Evidence

[18] Father next challenges the court's determination that his consent was not required for Stepfather to adopt. We will not disturb a decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence. *Id.* Instead we examine the evidence most favorable to the decision together with reasonable inferences drawn therefrom to determine whether there is sufficient evidence to sustain the decision. *Id.* The decision of the trial court is presumed correct, and it is the appellant's burden to overcome that presumption. *Id.*

[19] Generally, courts may not grant a petition for adoption without the consent of the child's biological parents. Ind. Code § 31-19-9-1(a). There are, however, exceptions to that general rule. Indiana Code section 31-19-9-8(a) provides, in relevant part:

(a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

* * * * *

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

* * * * *

(11) A parent if:

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Furthermore, subsection (a) is written in the disjunctive "such that the existence of any one of the circumstances provides sufficient ground to dispense with consent." *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014).

Father argues Stepfather "has not established a lack of support when Father had the ability to provide. He was attempting to establish the opportunity to provide such support." (Br. of Appellant at 19.)[3] Indiana law "imposes upon a parent the duty to support his children. This duty exists apart from any court order or statute." *Irvin v. Hood*, 712 N.E.2d 1012, 1014 (Ind. Ct. App. 1999) (internal citation omitted). Thus, Father does not need the court to help him "establish the opportunity" to provide support for Child.

Regarding Father's ability and willingness to pay support, the trial court found and concluded:

> 1. It is undisputed that [Father] has never provided any support for [Child].
>
> 2. [Father] has often been incarcerated during [Child's] life. This does not relieve him of the duty to make a good-faith attempt to support his child.
>
> 3. [Father] was clearly employed on October 28, 2006, at a tanning salon when he engaged in Sexual Misconduct with a Minor. He paid no child support while working at the tanning salon.

---

[3] Father also argues Stepfather did not prove Father was an unfit parent or that he did not communicate significantly with Child. As the statute is written in the disjunctive, we need address only one of these arguments.

4. Dr. Fink testified that he has known [Father] since 2009 and that [Father] is capable of working. Dr. Fink has seen [Father] working in the last three months.

5. Clearly, [Father] has failed to provide support [Child] for a period of one year when able to do so. Therefore, his consent to the adoption of [Child] by [Stepfather] is not required.

(App. Vol. 2 at 88.) Father's argument, "there is no evidence of sufficient income to pay support for any one year period," (Br. of Appellant at 17), is an invitation for our court to reweigh the evidence, which we cannot do. *See In re Adoption of M.A.S.*, 815 N.E.2d at 218 (appellate court cannot reweigh evidence or judge credibility of witnesses).

Father cannot escape his obligation to support Child through his seemingly continual incarceration. *See In re Adoption of T.L.*, 4 N.E.3d 658, 663 (Ind. 2014) ("[W]e cannot imagine that the legislatures intended for incarcerated parents to be granted a full reprieve from their child support obligations while their children are minors. . . . Moreover, adopting such a position would cut against the common law tradition that has long held parents responsible for the support of their offspring.") (quoting *Lambert v. Lambert*, 861 N.E.2d 1176, 1179 (Ind. 2007)). Further, Father was not incarcerated for the two-year period he prolonged these proceedings. At his advisement of rights hearing on September 16, 2014, Father testified he was "self employed . . . working for [his] father . . . painting and, and doing a little remodel work." (Tr. at 5.) Father indicated he was being paid $300.00 a week at that time. Dr. Fink also testified he saw Father working at a restaurant three months prior to the final hearing in 2016.

Father did not pay support during this two-year period despite his ability to do so. Thus, the evidence was sufficient to prove Father's consent to Child's adoption was not required due to his lack of support of Child for a one-year period. *See In re Adoption of B.R.*, 877 N.E.2d 217, 218 (Ind. Ct. App. 2007) (father's consent to adopt child not required when trial court found father "paid no support despite having the ability to do so").

# Conclusion

[22] The trial court did not abuse its discretion or violate Father's right to due process when it denied Father's motion to continue. Further, Stepfather presented sufficient evidence Father's consent to Child's adoption was not required because Father had the ability to pay support and did not for a one-year period. As Father has not demonstrated error in the court's grant of Stepfather's adoption of Child, we affirm.

[23] Affirmed.

Najam, J., and Bailey, J., concur.