# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROBERT G. FORBES**
Forcum & Forbes, LLP
Hartford City, Indiana

ATTORNEY FOR APPELLEES:

**CHRIS M. TEAGLE**
Muncie, Indiana



FILED
Jul 28 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.P., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1311-MI-960 |
| | ) | |
| G. M. and R.M., | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-1307-MI-16

**July 28, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

J.P. ("Father") appeals the trial court's order granting the petition for visitation filed by G.M. ("Grandmother") and R.M. ("Grandfather" and collectively "Grandparents"), the maternal grandparents of his daughter M.P. Father raises two issues which we revise and restate as:

I.      Whether the trial court abused its discretion in denying his motion for a continuance; and

II.     Whether the trial court erred in its order granting Grandparents visitation.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In September 2011, M.P. was born to Father and K.M. ("Mother"). Father and Mother were married after M.P. was born, and Mother died in December 2012. Since Mother's death, M.P. and Mother's other child, C., lived with Father.

On July 9, 2013, Grandparents filed a petition for visitation with M.P. Grandparents alleged that they asked on several different occasions to "get her, have been told we can have her and at the last minute for different reasons could not get her." Appellant's Appendix at 7.

On July 29, 2013, Grandparents filed a request for a hearing, and the court scheduled a hearing for August 19, 2013. On August 13, 2013, an attorney filed an appearance on behalf of Grandparents and a motion for a continuance. The court granted the motion and rescheduled the hearing for August 20, 2013.

On August 20, 2013, the court held a hearing on Grandparents' petition for visitation and indicated at the start that it would also hear a case involving the guardianship of C.

2

Father appeared without counsel, and when asked by the court whether he intended to be represented, Father stated: "I thought we were all just going to do it without an attorney so I didn't get one." Transcript at 5. The following exchange then occurred:

THE COURT: Are you going to get one?

[Father]: Yes. I found out yesterday in the mail that they had him as an attorney.

THE COURT: Alright.

[Father]: When I got it in the mail.

THE COURT: So, are you asking for a continuance . . .

[Father]: . . . Continuance, yes.

THE COURT: [Grandparents' attorney,] what's your clients [sic] position on that?

[Grandparents' Attorney]: I mean I understand his request for counsel but they'd like to get these issues resolved as quickly as possible.

THE COURT: Okay.

[Grandparents' Attorney]: I don't know if he has – as far as the grandparent-grandparenting.

THE COURT: That's the one I'd like to address . . .

[Grandparents' Attorney]: . . . (Inaudible) with [M.P.]. I don't know if he has an objection to that. Him and I just discussed [C.] so I don't know.

THE COURT: Alright. As far as [the visitation action] is concerned, the petition for or the motion for continuance is denied. We're going to go forward on that hearing regarding grandparents [sic] visitation rights for the [Grandparents], with [M.P.]. On the matter of whether

3

> or not you should be removed as guardian, I'll come back and talk about that in a few minutes. We might want to hear that later.

Id. at 5-6.

The court then asked Father if he objected to Grandparents' visitation with M.P., and Father stated that he did not in the beginning. The court asked Father if he knew of any good reason why the court should not grant Grandparents visitation, and Father stated: "Like I said I'd rather have a lawyer." Id. at 6. The court told Father that he would have to proceed without a lawyer and that this was the day of the hearing. Father then said that the reason Grandparents should not have visitation is "[b]ecause of what my son has come up and told me has happened over at . . . their place." Id. at 7. The court then stated: "Okay. Well it [sic] objected to." Id.

Grandmother testified. When asked by the court, Father stated that he did not have any questions for Grandmother. The court then questioned Grandmother, asked Father if he had any questions based upon the court's questioning, and Father said "No." Id. at 13. Grandparents' attorney indicated that he did not have any additional evidence. The court asked Father if he wanted to present evidence or testimony, and Father stated: "I don't have no witnesses so I don't know." Id. at 14. The court then asked Father if he wanted to testify, and Father stated: "Like I said, I don't know. I don't understand you know. I'm not . . . ." Id. Upon questioning by the court, Father indicated that he completed high school but did not understand "[t]his whole legal thing you know." Id. Father stated: "I guess I could testify." Id. Father then testified that Grandparents come late at night, that they want to be a part of

4

the children's lives all of a sudden, and that he was just doing what he believed would think was right.

Near the end of the hearing, the court stated that Grandparents were asking for Father to be removed as the guardian, that that would result in a number of changes for C., and that it was granting Father's motion for a continuance to obtain counsel. The court asked Father how much time he needed to obtain a lawyer, and Father said that he could find one that week. The court then scheduled a hearing for September and October.

That same day, the court entered an order awarding Grandparents' visitation which found that Father did not object to an award of appropriate grandparent visitation.[1] On September 19, 2013, Father, by counsel, filed a motion to correct errors arguing that the court erred in denying his request for a continuance and that the court's mandate of a schedule for grandparent visitation constituted a violation of his rights. On October 14, 2013, the court denied Father's motion to correct errors.

## DISCUSSION

The first issue is whether the trial court abused its discretion in denying Father's motion for a continuance. The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court. Litherland v. McDonnell, 796 N.E.2d 1237, 1240 (Ind. Ct. App. 2003), trans. denied. We will reverse the trial court only for an abuse of that

---

[1] In his brief, Father argues that the finding that he did not object to an award of appropriate grandparent visitation mischaracterizes his position. Father points to the court questioning him as to the reason that Grandparents should not have visitation, his answer of "[b]ecause of what my son has come up and told me has happened over at . . . their place," and the court's statement of "Okay. Well it objected [sic] to." Transcript at 7.

discretion.  Id.  "An abuse of discretion may be found on the denial of a motion for a continuance when the moving party has shown good cause for granting the motion."  Rowlett v. Vanderburgh Cnty. Office of Family & Children, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), trans. denied; see Trial Rule 53.5.  A trial court abuses its discretion when it reaches a conclusion which is clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom.  Hess v. Hess, 679 N.E.2d 153, 154 (Ind. Ct. App. 1997).  If good cause is shown for granting the motion, denial of a continuance will be deemed to be an abuse of discretion.  Id.  No abuse of discretion will be found when the moving party has not shown that he was prejudiced by the denial.  Litherland, 796 N.E.2d at 1240.  The United States Supreme Court has addressed the issue of continuances by stating:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.  Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.  There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

Ungar v. Sarafite, 376 U.S. 575, 589-590, 84 S. Ct. 841, 849-850 (1964) (citations omitted), reh'g denied.

"[A]mong the things to be considered on appeal from the denial of a motion for continuance, we must consider whether the denial of a continuance resulted in the deprivation of counsel at a crucial stage in the proceedings."  Hess, 679 N.E.2d at 154 (citing

6

Homehealth, Inc. v. Heritage Mut. Ins. Co., 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), trans. denied). We also consider whether the record demonstrates dilatory tactics on the part of the movant designed to delay coming to trial. See Hess, 679 N.E.2d at 155. We must also consider whether a delay would have prejudiced the opposing party to an extent sufficient to justify denial of the continuance. Id. at 154.

Father argues that he did not know that Grandparents would be represented until the day before the hearing, that the request for a continuance was with respect to a crucial stage of the proceedings, that his constitutional rights were prejudiced, and that there would have been no significant prejudice to Grandparents if the hearing had been continued for a brief period to allow him to retain counsel. Father also points out that Grandparent's counsel acknowledged that he understood that Father would want the opportunity to hire legal counsel after Grandparents had done so.

Grandparents argue that their counsel did not agree to a continuance of the hearing with respect to their visitation, and point out that Father had six weeks to obtain counsel. Grandparents also assert that Father was not prejudiced as he was allowed to introduce testimony at the hearing.

We observe that "a parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005) (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). The parent-child relationship is "one of the most valued relationships in our culture." Id. (quoting Neal v. DeKalb Cnty. Div. of Family &

7

Children, 796 N.E.2d 280, 285 (Ind. 2003)). Although the amount of visitation is left to the sound discretion of the trial court, "'the Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of [his] children.'" In re M.L.B., 983 N.E.2d 583, 586 (Ind. 2013) (quoting In re K.I., 903 N.E.2d 453, 462 (Ind. 2009)).

The record reveals that the Grandparents filed a petition for visitation on July 9, 2013, filed a request for a hearing twenty days later on July 29, 2013, and their attorney filed an appearance and a motion for a continuance six days prior to the initially scheduled hearing. The court granted the Grandparents' motion for a continuance and rescheduled the hearing for one day later. At the hearing, when asked by the court whether he intended to be represented, Father stated: "I thought we were all just going to do it without an attorney so I didn't get one." Transcript at 5. Father indicated he was going to obtain an attorney. Father's motion for a continuance at the hearing was his first motion seeking to continue the hearing. While not questioned regarding his ability to obtain counsel until the end of the hearing, Father testified that he could obtain an attorney that week, and the court granted a continuance of the hearing to allow Father to obtain counsel on the guardianship issue. The case required comprehension of the law with respect to Grandparents' visitation rights and the rules of evidence and trial procedure.

The entirety of the testimony presented by the Grandparents is contained on less than four pages of transcript and the entire testimony of the Father in response to questioning by

the court consists of two pages of transcript, the majority of which is in large type, during which he expressed that Grandparents come late at night, that they want to be a part of the children's lives all of a sudden, and that he was just doing what he believed Mother would think was right.

The court awarded parenting time very much like that for a non-custodial parent per the Indiana Parenting Time Guidelines, including every other weekend from 6:00 p.m. Friday until 6:00 p.m. Sunday, each Wednesday evening from 5:00 p.m. until 8:00 p.m; one week in each month of June, July, and August with Grandparents selecting the week; the entire Mother's Day weekend; M.P.'s birthday in alternate years; alternating Christmas Eve and Christmas Day; additional days as the parties may agree; and with make-up days for the Grandparents in the event of a conflicting holiday.

Under the circumstances, we conclude that Father demonstrated good cause for a continuance of the hearing, that this case involved at least some complexity as well as a fundamental right of Father, and that Father was prejudiced by the denial of his motion for a continuance. We also conclude that a delay would not have prejudiced Grandparents to an extent to justify denial of the continuance. Therefore, we conclude that the trial court abused its discretion in denying Father's motion to continue, and because we so find, we do not address Father's other arguments.

CONCLUSION

For the foregoing reasons, we reverse the trial court's denial of Father's motion to continue and remand for a new hearing.

9

Reversed and remanded.

VAIDIK, C.J., and NAJAM, J., concur.