## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2016, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of Ga.R., Gr.R., & J.R. (minor children)

and

D.R. (mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

August 16, 2016

Court of Appeals Case No. 27A04-1512-JT-2353

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

Trial Court Cause Nos.
27D02-1504-JT-12
27D02-1504-JT-13
27D02-1504-JT-14

**Pyle, Judge.**

## Statement of the Case

In this consolidated appeal, D.R. ("Mother") appeals the involuntary termination of the parent-child relationship with her children, J.R., Gr.R., and Ga.R. (collectively, "the Children").[1] On appeal, Mother does not challenge any of the trial court's findings or conclusions supporting its order to involuntarily terminate her parent-child relationship with the Children. Instead, Mother—who had multiple notices of the termination hearing but did not appear for it—argues that the trial court abused its discretion by denying her attorney's oral request for a continuance of the termination hearing made on the day of the hearing. Because Mother did not show any good cause for the continuance or show that she would be prejudiced, we conclude that the trial court did not abuse its discretion by denying the oral request for a continuance and affirm the trial court's judgment.

We affirm.

## Issue

Whether the trial court abused its discretion by denying Mother's counsel's oral request for a continuance made on the day of the termination hearing.

---

[1] J.R., Gr.R., and Ga.R. had different fathers. Gr.R.'s father, B.V., consented to the voluntary termination of his parental rights. Paternity of J.R. and Ga.R. was never established. However, J.R.'s alleged father, O.M.C., and Ga.R.'s alleged father, A.C., did not appear at the termination hearing, and their parental rights were involuntarily terminated. None of the fathers are involved in this appeal.

## Facts

[3] Mother has three children: J.R., born in 2002; Gr.R., born in 2005; and Ga.R., born in 2007. On November 5, 2012, the Indiana Department of Child Services ("DCS") removed the Children from Mother's home after the police had found, the previous day, Mother unconscious in her home along with a plate containing a white, powdery substance and a straw. Mother, who had been home alone with five-year-old Ga.R., admitted to DCS that she had snorted a Lortab pain pill. At that time, Mother was on probation from a dealing in controlled substances conviction. DCS initially placed the Children with their maternal grandmother ("Maternal Grandmother") and later placed them with relative foster parents.

[4] DCS filed three individual petitions alleging that the Children were children in need of services ("CHINS"). In these CHINS petitions, DCS alleged that Mother had a history of abusing prescription medication and illegal substances. Prior to the fact-finding hearing, Mother tested positive for marijuana or THC. The trial court determined that the Children were CHINS and ordered Mother to, among other things: refrain from using and selling illegal controlled substances; take prescription medication in the amount and manner prescribed; submit to random drug screens; complete a substance abuse evaluation and follow all treatment recommendations; comply with the terms of her probation; engage in counseling services; cooperate and maintain contact with DCS and her family case manager; participate in supervised visitation; secure a stable source of income; maintain appropriate housing; participate in and successfully

complete a home-based services program; and establish paternity of J.R. and Ga.R.

[5] During the CHINS proceedings, Mother continued to have positive drug screens. For example, on various screens between November 2013 and May 2015, Mother's drug screens included positive results for THC, opiates, oxycodone, cocaine, methadone, and morphine. Mother also had difficulties actively participating in and completing required services. For instance, Mother did not complete a substance abuse program (outpatient or inpatient) despite her service providers' recommendations and DCS's arrangement of such services. Additionally, Mother did not complete individual counseling and did not maintain consistent contact with her DCS family case manager.

[6] On April 30, 2015, DCS filed three individual petitions to terminate Mother's parental rights to the Children. The following week, on May 7, 2015, the trial court held an initial hearing at which Mother was present. The trial court appointed counsel for Mother, scheduled a preliminary hearing for July 2, 2015, and scheduled the termination fact-finding hearing for August 5, 2015 at 9:00 a.m. The trial court also appointed a court-appointed special advocate ("CASA").

[7] Mother appeared at the July 2, 2015 preliminary hearing, and the trial court notified the parties that the termination hearing remained set for August 5, 2015 at 9:00 a.m. Thereafter, on July 16, 2015, Mother's DCS family case manager hand-delivered a "Notice of Hearing on Petition for Termination of Parent-

Child Relationships" ("notice of termination hearing") to Mother. (DCS's Ex. 16). This notice of termination hearing provided that the hearing was scheduled for August 5, 2015 at 9:00 a.m. Mother signed the notice of termination hearing to acknowledge that she had received it.

[8] On July 21, 2015, a hearing was held as part of Mother's CHINS proceeding. At the hearing, Mother's counsel discussed the termination hearing date with Mother and "requested at that time that she make sure to schedule an appointment" before the hearing. (Tr. 3).

[9] On August 5 and 20, 2015, the trial court held termination hearings on the three termination petitions. At the time of the hearings, J.R. was twelve years old, Gr.R. was ten years old, and Ga.R. was almost eight years old, and they had been removed from Mother's care for almost three years. Mother was represented by counsel at each hearing, but she did not appear at either hearing. At the beginning of the August 5 hearing, the trial court waited fifteen minutes for Mother to appear and then asked Mother's counsel about her whereabouts. Mother's counsel stated:

> Judge, this [August 5, 2015] hearing date was discussed I believe the last time we were [in] Court on the CHINS matter. I had requested at that time that [Mother] make sure to schedule an appointment before today's date. That did not occur. I have been attempting to contact since last week my client by phone, and the number I have indicates that the individual is not taking calls at this time. Therefore, Your Honor, since I've not been able to speak with my client and she's not here today, I'll be requesting at this time a continuance of today's trial.

(Tr. 3-4). DCS objected to Mother's counsel's oral request for a continuance. DCS stated that Mother was "well aware" of the date and time of the hearing, noting that she had received a hand-delivered notice on July 16 and that she had been present at a July 21 CHINS hearing where the termination hearing date was discussed. (Tr. 4). The trial court agreed that Mother had been notified about the hearing date and time, stating:

> I would note also that [Mother] was present for her initial hearing on May 7, 2015, and the Court gave her this date and time in open court. She was also present for the preliminary fact-finding on July 2nd, 2015, and again, it says fact-finding hearing remains set [for] August 5th at 9:00[.]

(Tr. 4-5). The trial court then asked Mother's counsel if he had "anything else . . . on that issue?", and counsel replied, "No, Your Honor." (Tr. 5). The trial court then denied Mother's counsel's oral request to continue the hearing, stating:

> Okay. At this time [Mother] has had multiple notices of today's hearing, and based upon her history of again what we've, what we're seeing today showing up sometimes, not showing up other times, at this point I'm going to deny the motion to continue, and we can go ahead and proceed with the trial.

(Tr. 5).

During the August 5 hearing, Mother's service providers testified regarding Mother's sporadic participation and failure to comply with services throughout the underlying proceedings. For example, Mother, who continued to abuse drugs, had failed to complete any drug treatment program. They also testified

that Mother had not remained in contact with her family case manager, had not maintained stable housing (including having at least thirteen different residences), and had been unable to secure consistent employment. Additionally, the CASA testified that termination was in the Children's best interests given Mother's unwillingness to complete drug treatment and participate in services. The CASA also testified that J.R. and Gr.R. had expressed the desire to be adopted by their relative foster parents. Mother's counsel cross-examined all six of DCS's witnesses and requested that the trial court take judicial notice of two progress reports from the underlying CHINS proceeding.

[12] At the beginning of the August 20 hearing, Mother's counsel informed the trial court that he had left a voicemail for Mother regarding the termination hearing but had not heard from her. Mother's counsel did not renew his request to continue the hearing. During the hearing, the parties entered a stipulation to DCS's Exhibits 18, 19, and 20-A through 20-P. Exhibit 20 consisted of the numerous positive drug screen results that Mother had between November 2013 and May 2015 during the CHINS and termination proceedings. Thereafter, in December 2015, the trial court entered a detailed order involuntarily terminating Mother's parental rights to the Children. Mother now appeals.

## Decision

[13] On appeal, Mother does not challenge any of the trial court's findings or conclusions supporting its order to involuntary terminate her parent-child

relationship with the Children. Instead, she presents a single issue for our review and contends that the trial court abused its discretion by denying her oral request for a continuance.

[14] Pursuant to our Indiana Trial Rules, "[u]pon [a] motion" to continue a trial filed by a party, a trial court has "discretion" to "postpone[] or continue[]" the trial. Ind. Trial Rule 53.5. "[A] trial court shall grant a continuance upon motion *and* 'a showing of good cause established by affidavit or other evidence.'" *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009) (quoting Ind. Trial Rule 53.5) (emphasis added). "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014) (citing *Rowlett v. Vanderburgh Cnty. Office of Family & Children,* 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*). "'An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion,' but 'no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.'" *Id.* (quoting *Rowlett,* 841 N.E.2d at 619).

[15] "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied." *J.P. v. G. M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-590 (1964), *reh'g denied*). Continuances to allow time for additional preparation are

generally disfavored and require a showing of "good cause" and how "it is in the interests of justice." *Williams v. State*, 681 N.E.2d 195, 202 (Ind. 1997). *See also Clodfelder v. Walker*, 125 N.E.2d 799, 800 (Ind. 1955) (explaining that a motion for continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance). Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." *Lewis v. State*, 512 N.E.2d 1092, 1094 (Ind. 1987).

[16] Mother argues that the trial court's denial of her counsel's oral continuance request was erroneous because the trial court should have given her counsel the opportunity "to contact [her] and get her to the TPR hearing[.]" (Mother's Br. 22). She does not contend that she had, or that her trial counsel presented, any "good cause" for the continuance. Nor does she show how she was prejudiced by the denial. Mother merely states the trial court should have given her the opportunity to present evidence "regarding what was best for [her] children" and that a continuance "would have had no negative effect upon the [C]hildren." (Mother's Br. 22, 23).

[17] We conclude, however, that the trial court's denial of Mother's counsel's continuance request was not an abuse of discretion. Mother's counsel requested the continuance by an oral motion on the day of trial and not by a motion supported by an "affidavit or other evidence" or a "showing of good cause" as required by Trial Rule 53.5. Additionally, Mother's counsel's neither articulated any good cause for the continuance nor asserted that she would be prejudiced. Instead, counsel stated that Mother was aware of the hearing but

had failed to appear. Before denying Mother's counsel's continuance request, the trial court noted that Mother had received notice, on multiple days, of the August 5 termination hearing. Given the deference to the trial court's decision on this matter, we conclude that the trial court did not abuse its discretion by denying Mother's counsel's oral request for a continuance made on the morning of trial. *See, e.g.*, *Gunashekar*, 915 N.E.2d at 956 (affirming the trial court's denial of a motion to continue the bench trial).[2]

[18] Affirmed.

Bradford, J., and Altice, J., concur.

---

[2] In support of her argument that the trial court abused its discretion by denying her oral continuance request, Mother also relies on *Rowlett*. We find Mother's reliance misplaced as her circumstances are easily distinguishable from *Rowlett*. Unlike *Rowlett*, Mother—who was not incarcerated and had the actual opportunity to appear at the termination hearing, had been given multiple opportunities to participate in services offered by DCS, and moved for her continuance on the day of the hearing—did not show good cause for her continuance request.