## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2017, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT A.S.

Erin L. Berger
Evansville, Indiana

ATTORNEY FOR APPELLANT J.M.

Julianne L. Fox
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of C.S., Co.M., Ca.M. (Minor Children),

and

A.S. (Mother) and J.M. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

July 19, 2017

Court of Appeals Case No. 82A01-1701-JT-57

Appeal from the Vanderburgh Superior Court

The Honorable Brett J. Niemeier, Judge

Trial Court Cause Nos. 82D04-1605-JT-826, -27, -28

**Crone, Judge.**

## Case Summary

[1] J.M. ("Father") challenges the sufficiency of evidence to support the trial court's order terminating his parental relationship with his children, Co.M. and Ca.M. (collectively "his Children"). He also contends that the trial court abused its discretion in denying his motion for continuance. A.S. ("Mother") also challenges the sufficiency of evidence to support the termination of her parental relationship with C.S., Co.M., and Ca.M. (collectively "her Children" or "the Children").[1] Because Mother and Father share parentage to two of the children, they are both parties in this joint appeal. Finding no abuse of discretion in the trial court's denial of Father's motion for continuance and concluding that the evidence is sufficient to support the termination orders as to both Mother and Father, we affirm.

## Facts and Procedural History

[2] Mother has two sons with Father, Co.M. and Ca.M. Her oldest son, C.S., has a different father.[2] In April 2015, the Department of Child Services ("DCS") received a report concerning Mother's illegal drug use and neglect of her Children. She and her Children had been living with friends at a home without running water, food, or beds for her Children. Mother tested positive for

---

[1] C.S. was born February 12, 2002; Co.M. was born May 15, 2005; and Ca.M. was born November 7, 2006.

[2] C.S.'s father consented to the termination of his parental rights and is not involved in this appeal.

benzodiazepines, marijuana, oxycodone, amphetamine, and methamphetamine ("meth"), and her Children were removed and placed with their respective fathers. A week later, DCS filed petitions seeking to adjudicate the Children as children in need of services ("CHINS"). The trial court ordered Father to remain substance-free and submit to random screens. Both Mother and Father were present for the April 22, 2015 CHINS hearing, and all three of the Children were designated as CHINS.

[3] On May 12, 2015, DCS acted on a report that Father had neglected and abandoned his Children by leaving them with his mother, who was an unapproved caregiver due to her drug use. DCS removed his Children and placed them in foster care.

[4] On May 19, 2015, the trial court held the CHINS dispositional hearing. The trial court ordered Mother to complete a substance abuse evaluation, follow treatment recommendations, submit to random drug screens, refrain from drug and alcohol use, and participate in supervised visitation. On a couple occasions, Mother began parent aide services but cancelled numerous appointments and eventually was discharged for lack of progress. She failed to attend the scheduled assessments and began drug court in June 2015. She was discharged from her treatment group for failure to attend.

[5] Father failed to appear for the dispositional hearing, and DCS was unable to locate him. At that time, DCS learned that Father was the subject of an active arrest warrant for felony forgery and theft. A second warrant was issued in a

previous cause involving a meth conviction for which Father was serving probation. Father's whereabouts were unknown until July, when he was apprehended by authorities and eventually brought to court from jail on a writ. At a July 15, 2015 hearing, the trial court issued a parental participation order requiring Father to obtain a substance abuse evaluation, follow treatment recommendations, remain drug and alcohol free, submit to random drug screens, and participate in supervised visitation. Father remained incarcerated for three more months and was eventually placed in a forensic diversion program.

[6] In August 2015, DCS filed an information for contempt against Mother based on her failure to attend various assessments and appointments and noncompliance with drug court for failure to attend Alcoholics Anonymous/Narcotics Anonymous ("AA/NA") meetings. Mother was found to be in contempt and served ninety days of work release. She eventually completed the treatment group sessions in October 2015. She did not participate in individual therapy, and her case was closed in December 2015. Thereafter, she relapsed and used hydrocodone, alcohol, tramadol, and oxycodone, which prompted DCS to file another contempt petition. She was referred for more services but failed to attend the assessment. Her child C.S. was sent to a behavioral center in Columbus. Eventually, he was placed with his brothers Co.M. and Ca.M. in the same foster home. Mother's supervised visits advanced to unsupervised visits. However, her positive drug screens caused her visitation to revert to supervised visits, which eventually were

discontinued in May 2016 due to lack of consistency. She had brief stints of employment and lived with a friend and then her mother during the pendency of the CHINS proceedings.

[7] In October 2015, Father was convicted of forgery, theft, and fraud, all as level 6 felonies. He was sentenced to two years but was assigned to a county treatment center. In November and December 2015, he tested positive for alcohol. He was admitted for inpatient treatment but was medically discharged after he fractured his elbow. He enrolled in an outpatient treatment program but within three months tested positive for meth. In the ensuing two months, he tested positive twice for meth and once for alcohol, in violation of his probation conditions. After each positive screen, he served a few days in jail. He declined to participate in individual therapy recommended by his substance abuse treatment provider. His visits were changed from supervised to unsupervised, but his Children reported that he was taking them to his own mother's house and leaving them with her (unsupervised) so that he could sleep. By December 2015, he was allowed only supervised visits, and his visitation was closed out in the spring of 2016.

[8] On May 16, 2016, DCS filed a petition for termination of Mother's and Father's parental rights with a permanency plan of adoption by the foster parents. Mother's factfinding hearing was conducted on September 12 and 13, 2016. After one continuance on Father's motion and a couple rescheduled dates by the trial court, the trial court held Father's factfinding hearing on

September 9 and October 28, 2016. Father made another request for continuance, which the trial court denied.

[9] On December 14, 2016, the trial court issued separate orders terminating the parental rights of Mother and Father. Both parents appeal. We will address their claims separately where appropriate. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in denying Father's motion for continuance.

[10] Father challenges the trial court's denial of his motion for continuance. The decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct. App. 2014). We will reverse only for an abuse of that discretion. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2005), *trans. denied* (2006). An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *J.P.*, 14 N.E.3d at 790. Where the trial court denies a motion for continuance, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion. *Rowlett*, 841 N.E.2d at 619; *see also* Ind. Trial Rule 53.5 (stating that trial court has discretion to grant continuance on motion and continuance "shall be allowed upon a showing of good cause established by

affidavit or other evidence."). No abuse of discretion will be found where the moving party has not shown that he was prejudiced by the denial of his continuance motion. *J.P.*, 14 N.E.3d at 790.

[11] Here, the record contains no written motion or affidavit establishing good cause for Father's request for continuance. Our review of the chronological case summary shows that Father had already been granted at least one continuance and that the proceedings had been rescheduled by the trial court on at least one other occasion. Appellant's App. at 48-50.[3] Father's disappearance during the first two months of the CHINS proceedings also contributed to the protracted proceedings in this case. The transcript of Father's factfinding hearing contains but one brief reference by the trial court to its denial of Father's latest request for continuance. *See* Tr. Vol. 1 at 60 ("Alright, and I know you had moved to – actually prior to this trial starting – for a continuance, which I denied."). As best we can discern from his appellant's brief, Father predicated this request for continuance on his desire for more time to demonstrate his strides toward parental fitness. Father's Br. at 16. Although not entered in response to Father's previously-denied request for continuance, the following excerpt from Finding 41[4] offers insight into the trial court's reasons for denying Father's request:

---

[3] The only appendix included in the record is Mother's "Appellant's Appendix." It includes documents pertinent to Father and Mother, collectively and individually, and we cite it as captioned.

[4] Where the findings include personal designations other than those used throughout this decision, we use the latter for clarity and consistency.

If circumstances had been different and these children were living with close relatives (so the delay wouldn't have a material adverse effect) maybe delaying this case for another six months, so more of the future could be known, could have occurred. Or maybe, if this termination case had been filed only after six months, the Court could justify taking a wait and see approach. Unfortunately, the CHINS cases are already [a] year and [a] half old. The Court must rule according to the facts and the law as they exist now.

Appellant's App. Vol. 2 at 105.

[12] Simply put, the record is devoid of evidence to indicate that Father made any showing of good cause for a continuance. As such, we find no abuse of discretion in the trial court's denial of his request for continuance.

## Section 2 – The trial court did not clearly err in terminating the parental relationships of Mother and Father with each of their children.

[13] Mother and Father challenge the sufficiency of the evidence supporting the trial court's judgments terminating their parental relationships with their children. Where they raise separate allegations, we will address them individually. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor

judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

[14] In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[15] To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> ....

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by

the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

## Section 2.1 – Mother and Father have failed to demonstrate clear error concerning the reasonable probability of unremedied conditions.

### *A. Mother*

[17] Mother asserts that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to the Children's removal will not be remedied. Where, as here, Mother does not challenge any of the trial court's findings, we simply determine whether the unchallenged findings are sufficient to support the judgment. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Moreover, "the trial court should judge a parent's fitness to care for his [or her] children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id*. In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish

only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). In determining reasonable probability of unremedied conditions, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[18] Here, the trial court entered extensive unchallenged findings concerning the reasonable probability of Mother remedying the conditions that led to her Children's removal. With respect to treatment for substance abuse, the court found that she completed inpatient treatment but failed to follow the recommendations after her release. She also failed to meet with her parent aide and failed to attend AA/NA meetings, which led to her first contempt of court citation. When the court gave her a chance to purge herself of the contempt finding by complying with its orders, she failed to comply and was sentenced to ninety days incarcerated in a county work release facility. After her release, she abused prescription drugs (without prescriptions) and continued to fail drug screens, which resulted in a second contempt petition. Even then, she continued her drug use and was discharged from drug court for unsatisfactory progress. She enrolled in counseling but failed to attend appointments. "As of the date of the termination hearing, Mother had not successfully completed substance abuse treatment." *See* Appellant's App. Vol. 2 at 65 (Finding 11). Even after the permanency plan had been changed to termination, she was

discharged from an inpatient program for "giving another patient a prescription sleep aid." *See id*. (Finding 13). She continued to snort opiates and struggled to maintain stable housing and employment. "As of the date of the termination trials, Mother was not employed and admitted that she was unable to provide for the basic necessities of the children if they were returned to her immediately." *See id*. at 66 (Finding 16). The trial court ultimately found:

> 20. Mother has continued to struggle with sobriety during the pending CHINS matter. Mother admits that she has struggled with sobriety and addiction, but her actions have shown that very little has changed since the initial removal of the Children. Mother was actively using benzodiazepines in April, 2015; and she continued to use opiates and benzodiazepines through June, 2016, despite receiving multiple services aimed at dealing with her addiction, getting stable housing and becoming employed. The Court ordered Mother to participate in the most intensive and supportive service available – the Parents' Drug Court, but Mother simply refused to put in the work necessary to overcome her addiction. Mother has simply failed to overcome her addiction, mental health and stability issues.

*Id*.

[19] The Children were initially removed from Mother due to her substance abuse and neglect in the form of living with a friend in a home without any running water, food, or beds for the Children. Thereafter, her habitual patterns involved persistent use of illegal drugs, brief stints of employment, and living with friends or her mother. Although she initially made strides in her visitation with the Children, her pattern of drug abuse was one of relapse and failed drug screens. She had two contempt petitions filed against her based on these failed drugs

screens. As for services, her prevailing pattern was one of initial compliance followed by a failure to complete them. This resulted in many of the services being closed out due to lack of progress. Other than her acquisition of a Section 8 apartment, she simply has made no positive strides. The record supports the trial court's conclusion that a reasonable probability exists that the conditions that led to her Children's removal will not be remedied. *See McBride*, 798 N.E.2d at 199 (Ind. Ct. App. 2003).

### B. Father

[20] Father also challenges the sufficiency of the evidence to support the trial court's conclusion that a reasonable probability exists that the conditions that led to his Children's removal will not be remedied.[5] He correctly observes that the Children's initial removal was largely due to Mother's acts and omissions. However, as the trial court observed in its findings, just a few weeks after his Children were placed with him, he left them with his mother, whom he knew to be an unapproved caregiver due to her own drug abuse. Immediately thereafter, he was the subject of felony arrest warrants for forgery and a probation violation, and he disappeared for two months. This contributed to the chaos surrounding his Children's living situation and resulted in their

---

[5] Father also challenges the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to his Children's well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the children's well-being.

removal and placement in foster care. The trial court emphasized the negative effect of Father's disappearance on his Children in Finding 22:

> As previously stated, Father's whereabouts during the first two (2) months in the underlying CHINS matters were unknown. Father testified at trial that he was attempting to get his financial affairs in order and had planned on turning himself in. The Court believes his excuse was a hallow [sic] excuse. Father was eventually arrested and brought to Court from jail on July 15, 2015. Father's abandonment of his Children weighs heavy with this Court. The Court doubts whether Father ever would have come to Court or provided any assistance to his Children, but for him being caught and arrested.

Appellant's App. Vol. 2 at 101.

[21] The trial court also emphasized in its findings that over the course of the CHINS proceedings, Father failed numerous drug screens, testing positive for meth and alcohol. For each screen that he failed, he was jailed for a few days for violating probation. Though he recently made some strides, especially when it comes to sobriety, he nevertheless tested positive for methamphetamine six days after having been advised of the termination proceedings. *See id*. at 103 (Finding 33). Most of his "remarkable change" came shortly before the termination factfinding hearing. *Id*. The trial court was within its discretion to consider the timing of his improvements and weigh them accordingly. *See D.B.M. v. Ind. Dep't of Child Servs.*, 20 N.E.3d 174, 181-82 (Ind. Ct. App. 2014) (in balancing parent's recent improvements against habitual patterns of conduct, trial court has discretion to "weigh a parent's prior history more

heavily than efforts made only shortly before termination"), *trans. denied* (2015). Father's historical patterns include drug relapses as well as general disrespect for the many court orders, resulting in his being incarcerated for four probation violations. His criminal history is not minor, and includes multiple felony convictions, including class B felony burglary, class D felony theft, level 6 felony forgery with intent to deceive, and several level 6 felony drug-related convictions. With respect to the reasonable probability of unremedied conditions, the trial court ultimately found as follows:

> 41. After weighing all of the facts and circumstances in this case, the Court finds that Father has failed to adequately remedy the situation that brought about the removal and continued removal of his Children. The Court finds that Father has at least temporarily kept his addiction in check, but Father has simply run out of time to cure the instability issues and show the consistency necessary that would convince this Court that these first steps will lead to real permanent change, which is essential so these children['s] well-beings are no longer threatened by their relationship with Father. There certainly is a reasonable probability that Father's instability and/or drug usage which has put us in this case has not been remedied at this moment. The relapse rate for an addict like Father is incredibly high, [and] the recidivism rate for a person with Father's criminal record is also high. A relatively new job, a new home, an old girlfriend and sobriety for the first time in approximately a decade are a lot to handle and there is nothing to suggest Father can handle all of these things for any significant length of time. If circumstances had been different and these children were living with close relatives (so the delay wouldn't have a material adverse effect) maybe delaying this case for another six months, so more of the future could be known, could have occurred. Or maybe, if this termination case had been filed only after six months, the Court could justify taking a wait and see approach. Unfortunately, the

CHINS cases are already a year and a half old.  The Court must rule according to the facts and the law as they exist now.

Appellant's App. Vol. 2 at 105.

[22] In short, Father has a pervasive pattern of criminal conduct, probation violations, and substance abuse.  He also has a history of instability when it comes to employment and housing.  All these circumstances were properly considered in determining the reasonable probability of unremedied conditions. *See McBride*, 798 N.E.2d at 199.  Father's arguments amount to invitations to reweigh evidence and reassess witness credibility, which we may not and will not do.  We find no clear error here.

## Section 2.2 – Mother and Father have failed to establish clear error concerning the Children's best interests.

[23] Mother and Father both assert that the trial court clearly erred in concluding that termination is in the best interests of the Children.  Although not dispositive, permanency and stability are key considerations in determining the best interests of a child.  *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009).  A determination of a child's best interests should be based on the totality of the circumstances.  *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012).

[24] Although Mother does not challenge any of the trial court's findings on best interests, Father challenges the following:

43. The Children are strongly bonded with the foster parents;

44. The Children are doing well in the care of the current foster parents;

....

46. It is in the best interests of the Children to be adopted due to the inability of Father to provide appropriate care and supervision for the Children;

47. DCS and the Court Appointed Special Advocate (CASA) believe that adoption by foster parents is in the Children's best interest. These children need to be kept together as their bond with each other is very strong. The Court finds that adoption by the foster parents is in the Children's best interest.

Appellant's App. Vol. 2 at 105-06.[6]

[25] Here, the totality of the circumstances shows that the parents, though making some strides, simply could not maintain any improvement due to their deeply ingrained patterns of drug abuse, criminal conduct (particularly in Father's case), and instability. Meanwhile, the Children, now reunited as a group with the addition of C.S., are thriving in their preadoptive foster home. The foster parents, initially willing to adopt Co.M. and Ca.M., brought C.S. into their home and indicated their willingness to adopt all three as a group. DCS Family Case Manager Hilary Bemis and CASA Shannon Schultz both testified that termination followed by adoption by the foster parents is in the Children's best

---

[6] Father also challenges Findings 56 and 58. Finding 56 is merely a (correct) statement of the law, and Finding 58 is simply the trial court's conclusion that termination is in the Children's best interests. Appellant's App. Vol. 2 at 107-08.

interests. "[T]he testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[26] The trial court specifically found adoption by the foster parents to be in the Children's best interests, reasoning that all the Children "need to be kept together" due to their "very strong" sibling bond. *See* Appellant's App. Vol. 2 at 105-06 (Finding 47). Father posits that this amounts to a finding that sibling rights prevail over parental rights. We disagree, believing that the strong sibling bond is simply a component of the totality of the circumstances considered in determining best interests, as is the fact that Father's criminal record prohibits him from adopting his Children's half sibling, C.S., with whom Father has no parental relationship. Father's arguments amount to invitations to reweigh evidence and reassess witness credibility, which we may not and will not do. Neither Father nor Mother has demonstrated clear error in the trial court's conclusion that termination and adoption are in the Children's best interests. Accordingly, we affirm.

[27] Affirmed.

Baker, J., and Barnes, J., concur.