


**FILED**

Nov 21 2025, 9:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In re Commitment of A.V.,

A.V.,

*Appellant-Respondent*

v.

Richard L. Roudebush Veterans Affairs Medical Center,

*Appellee-Petitioner*

---

November 21, 2025

Court of Appeals Case No.
25A-MH-1516

Appeal from the Marion Superior Court

The Honorable David Certo, Judge

Trial Court Cause No.
49D08-2505-MH-022888

---

**Opinion by Judge Felix**
Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

A.V. suffers from schizophrenia, and he was transported to Richard L. Roudebush Veterans Affairs Medical Center ("Hospital") following a car accident and physical altercation with law enforcement. Hospital petitioned for a temporary commitment order, which the trial court granted after holding a remote hearing over A.V.'s objection. A.V. now appeals the commitment order, raising the following issue for our review: Whether the trial court erred by holding a remote commitment hearing over A.V.'s objection.

We affirm.

## Facts and Procedural History

In early May 2025, A.V. was driving near a restaurant where he "had previously gotten a restraining order," and he "ended up on the curb in the grass." Tr. Vol. II at 25. What followed is unclear: A.V. "was either trying to trim the branches" near the restaurant or "he got in a fight with the owner" of the restaurant. *Id.* When law enforcement came to the scene, A.V.'s behavior "ended up escalating" into "a physical altercation" with the officers. *Id.* A.V. was taken to Hospital, where he was diagnosed with schizophrenia.

On May 22, Hospital petitioned for an involuntary temporary commitment of A.V., alleging in part that A.V. was "dangerous" due to his diagnosis, the circumstances leading to his hospitalization, and the fact that A.V. was

"making verbal threats to staff while exhibiting disorganized behavior on the unit." Appellant's App. Vol. II at 14. The trial court issued an order setting a commitment hearing to be held on May 30 "over video." *Id* at 19. At the beginning of the hearing, A.V.'s counsel objected to the hearing's remote format because A.V. had not "consented to the remote hearing." Supp. Tr. Vol. II at 5. Hospital argued against rescheduling the hearing for an in-person setting, claiming that Hospital "police are unable to . . . transport patients to [a] hearing and [Hospital] would be limited in [its] ability to transport" A.V. *Id*. at 10. The trial court rescheduled the hearing for an in-person setting on June 2.

[5] Immediately following the May 30 hearing, Hospital petitioned for an order to have the sheriff's department transfer A.V. to the June 2 hearing, which the trial court denied. Hospital then filed a motion to have the June 2 hearing held remotely. Hospital argued that, pursuant to Interim Administrative Rule 14(C), "good cause" supported a remote setting because A.V.'s doctors believed an in-person hearing "would be detrimental to [A.V.'s] health and safety." Appellant's App. Vol. II at 30. In support thereof, Hospital alleged that

1. A.V. had "demonstrated intentions to elope in addition to making numerous threatening statements to cause harm to others," Appellant's App. Vol. II at 30;
2. Hospital staff could not safely transport A.V. to the hearing because A.V. "has a history of being physically combative and making threatening statements [to] staff and 'ramming the unit door with his shoulder,'" *id*. at 31;
3. Hospital "police [were] not permitted" to transport A.V. to the hearing because they "do not have jurisdiction off the [Hospital] premises," and

the trial court had denied Hospital's motion to have the sheriff's department transport A.V. to the hearing, *id*.;

4. A.V. did not oppose the May 30 hearing's original remote status until the start of the hearing; and

5. "The prospect of being handcuffed and escorted by security personnel pose[d] a potentially aversive stimulus for [A.V.], potentially exacerbating his already fragile mental state," *id*. at 34.

[6] At some point that is unclear from the record, the trial court modified the June 2 hearing to be held remotely. The trial court devoted the first part of the hearing to determining whether the hearing should be modified back to an in-person setting. A.V. argued that he was entitled to an in-person hearing and that a remote hearing was unsuitable due to his "difficulty hearing." Tr. Vol. II at 17. A.V. proposed either holding the hearing at the courthouse or in a conference room at Hospital, which could "seat maybe six people." *Id*. at 15.

[7] Hospital presented the testimony of Dr. Yena Choi, one of A.V.'s treating psychiatrists at Hospital, who opined that an in-person hearing would not be safe for A.V. or Hospital staff. A.V. had "repeatedly threatened" that "he's going to get off this unit one way or another," Tr. Vol. II at 10, and "talk[ed] about how he has hurt people in the past" and "ha[d] the ability to do so again," *id*. at 11. Hospital previously had to "restrain" A.V., and "he was very agitated. It did not go very well." *Id*. at 13. Moreover, the use of restraints was counterproductive for A.V.'s treatment due to his "trauma history." *Id*. at 14. Hospital staff did "not have the capabilities or [were] unwilling to help with" transporting A.V. to the courthouse. *Id*. at 12. Dr. Choi was also concerned because A.V. told her "he wants to go to the courthouse because he needs to get

to his car to find some secret documents," which made Dr. Choi believe that A.V. might attempt to flee the courthouse "to go get these documents." *Id*. at 13. As far as holding the hearing in-person in the Hospital conference room, Dr. Choi noted that Hospital could have "medications available" for A.V. if the hearing were held there, but Dr. Choi was concerned that the conference room was "a confined space" and A.V. could become "agitated and volatile" and unintentionally "hurt someone." *Id*. at 16.

[8] The trial court found good cause existed not to modify the hearing to an in-person setting and to instead continue to hold the hearing remotely. Specifically, the trial court found that "it would be unsafe to bring [A.V.] to the courthouse because it is very likely he'd become agitated and disruptive" and "attempt to elope," and it would be "unsafe to have to subdue him as a consequence." Tr. Vol. II at 18. The trial court further noted that it would be "unsafe" to hold the hearing in the Hospital conference room because "there's no assurance that [A.V. is] able to conduct himself any better" there. *Id*.

[9] The hearing proceeded remotely. One of A.V.'s treating psychiatrists, Dr. Adam Knox, testified in support of a temporary commitment order. Dr. Knox testified that he diagnosed A.V. with schizophrenia due to A.V.'s "delusions" and "disorganized behavior." Tr. Vol. II at 31. Dr. Knox believed that if a temporary commitment were not granted, it would lead to A.V. being involved in "more restraining orders," "arrest[s]," and "will almost definitely involve continued isolation and declining mental health, possibly to the point of . . . a more severe depression suicidality." *Id*. at 40. A.V. then testified regarding the

circumstances leading to his hospitalization. The trial court found that A.V. was "gravely disabled" and issued an order of temporary commitment. This appeal ensued.

## Discussion and Decision

### The Trial Court Did Not Abuse Its Discretion by Finding that Good Cause Existed to Hold the Commitment Hearing Remotely

[10] A petitioner seeking a temporary commitment must prove by "clear and convincing evidence" both that (1) the person sought to be committed "is mentally ill and either dangerous or gravely disabled" and (2) commitment "is appropriate." Ind. Code § 12-26-2-5(e). A.V. does not specifically challenge the commitment order; instead, he argues that the trial court abused its discretion by holding the June 2 hearing remotely because Hospital did not show "good cause" under Interim Administrative Rule 14(C).

[11] Interim Administrative Rule 14 "explains when and how trial courts may conduct remote proceedings using telephone or audiovisual telecommunication." *B.N. v. Health and Hosp. Corp.*, 199 N.E.3d 360, 363 (Ind. 2022). Section (C) of the rule provides that "[a] court must conduct all testimonial proceedings in person except that a court may conduct the proceedings remotely for all or some of the case participants for good cause shown or by agreement of the parties." Interim Admin. R. 14(C). The commentary to the Rule notes: "Presenting live testimony in court remains of utmost importance," so absent agreement of the parties, there must be a showing of good cause to proceed remotely. *Id*.

To show good cause under Interim Administrative Rule 14(C), the trial court "must offer something more than a one-size-fits-all, boilerplate pronouncement; good cause requires something specific to the moment, the case, the court, the parties, the subject matter, or other relevant considerations." *B.N.*, 199 N.E.3d at 364–65. We review a trial court's finding of good cause for an abuse of discretion. *Id*. at 363 (citing *Campbell v. State,* 161 N.E.3d 371, 375–76 (Ind. Ct. App. 2020); *J.P. v. G.M.*, 14 N.E.3d 786, 789–90 (Ind. Ct. App. 2014)).

A.V. argues that the trial court abused its discretion by finding good cause to hold the hearing remotely because that finding was "predicated on hypothetical future behavior that A.V. may or may not display at an in-person hearing. That finding was not specific to that moment." Appellant's Br. at 14 (citing *B.N.*, 199 N.E.3d at 364-65).[1]

This court's recent decision in *G.W. v. Madison State Hospital*, 245 N.E.3d 153 (Ind. Ct. App. 2024), *trans. not sought*, is persuasive. There, this court held that good cause existed for holding a remote commitment hearing when the treating psychiatrist testified that an in-person hearing would "have a harmful effect on [G.W.'s] health or well-being." *Id.* at 159 (record citation omitted). Here, as in

---

[1] To the extent A.V. argues that the trial court should have held the hearing in person in Hospital's conference room—which is not clear from his Appellant's Brief—A.V. cites no precedent or authority for a trial court holding a hearing in such a location. Accordingly, any such argument is waived. *See* App. R. 46(A)(8)(a) (requiring the appellant to support his or her arguments with "cogent reasoning" and "citations to the authorities [and] statutes"); *Miller v. Patel,* 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)) ("We will not step in the shoes of the advocate and fashion arguments on his behalf, 'nor will we address arguments' that are 'too poorly developed or improperly expressed to be understood.'").

*G.W.*, the trial court's good-cause determination was based on the risk to A.V.'s health that an in-person hearing posed. The trial court relied on the testimony of one of A.V.'s treating psychiatrists and found that "it would be unsafe to bring [A.V.] to the courthouse because it is very likely he'd become agitated and disruptive" and "attempt to elope," and it would be "unsafe to have to subdue him as a consequence." Tr. Vol. II at 18. This was no mere "hypothetical," Appellant's Br. at 14, as A.V. contends, but an informed risk determined by A.V.'s treatment providers. The trial court did not abuse its discretion in finding that good cause existed to hold a remote commitment hearing.

[15] Moreover, any error in holding the hearing remotely was harmless. Returning to *B.N.*, the Indiana Supreme Court determined that, although good cause did not exist for holding the remote hearing, the error did not "affect B.N.'s substantial rights" because (1) B.N. "participated by testifying and by conferring with counsel," (2) the lone "minor" technical difficulty during the hearing was "quickly resolved," (3) B.N.'s counsel "skillfully objected" to the hospital witnesses' testimony and "vigorously cross-examined" each witness, (4) the hospital witnesses "provided ample evidence supporting the trial court's decision to impose a regular commitment," and (5) B.N.'s counsel "emphatically argued in closing" that the burden of proof for a commitment had not been met. 199 N.E.3d at 365.

[16] Here, A.V. participated in the hearing by testifying regarding his mental status and providing his account of the incident that led to his hospitalization. This permitted the trial court to observe A.V.'s condition firsthand. Additionally,

A.V.'s counsel raised appropriate objections, cross-examined Hospital's witnesses, and argued against the commitment order. Moreover, Hospital's witnesses provided convincing testimony regarding A.V.'s mental status and behaviors in support of the commitment order.

[17] A.V. argues that he "struggled" to hear during the hearing and that "both parties experienced various technical difficulties that affected their ability to hear and speak." Appellant's Br. at 14. The record reflects several brief technical interruptions during the hearing during which the sound and/or video cut out or an echo was present. The trial court and parties, however, successfully navigated these interruptions by pausing, repeating themselves, and moving forward. Moreover, A.V. does not contest the trial court's finding that he is gravely disabled and that a temporary commitment is appropriate.[2] We thus are not persuaded that the hearing's remote format impaired A.V.'s right to be heard or "affect[ed]" his "substantial rights." *See B.N.*, 199 N.E.3d at 365.

[18] Based on the foregoing, the trial court did not abuse its discretion in finding that good cause existed to hold the commitment hearing remotely, and even if error

---

[2] We note that Hospital's petition for temporary commitment only alleged that A.V. was "dangerous," Appellant's App. Vol. II at 14, whereas the trial court determined that A.V. was "gravely disabled," *id*. at 36. These are two alternative but distinct grounds for a commitment order. *See A.S. v. Ind. Univ. Health Bloomington Hosp.*, 148 N.E.3d 1135, 1140 (Ind. Ct. App. 2020) (quoting Ind. Code § 12-26-2-5(3) ("Because the statute is written in the disjunctive, a petitioner need only prove the respondent is "either dangerous *or* gravely disabled.") (emphasis in original). A.V. does not argue that Hospital's failure to allege that he was gravely disabled deprived him of necessary notice or that the trial court erred by finding that A.V. was gravely disabled. Accordingly, any such arguments are waived. *See* App. R. 46(A)(8)(a); *Miller v. Patel,* 212 N.E.3d 639, 657 (Ind. 2023) (citation omitted).

did occur, such error was harmless. Accordingly, we affirm the commitment order.

[19] Affirmed.

Brown, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Kyle Mardis
Department of Veterans Affairs
Veterans Health Administration
Indianapolis, Indiana